THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* JULIO C. ORDEIN SÁNCHEZ, Defendant and Appellant.

No. Cr–62–108.   Decided November 15, 1962.

*Armando A. Miranda* for appellant. *J. B. Fernández Badillo, Solicitor General,* and *Nilita Vientós Gastón, Assistant Solicitor General,* for The People.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Rigau, and Mr. Justice Dávila.

PER CURIAM.

Appellant was sentenced to serve 10 days in jail and his driver's license was suspended for a term of two years, after having been charged with the violation of § 5-801 of the Vehicle and Traffic Law.

In this appeal he maintains that (1) the trial court erred in weighing the evidence, (2) it erred in refusing to permit defendant to present a complaint which the complainant policeman had filed for the same facts in the District Court, and (3) it erred in rendering a judgment of conviction without following the procedure fixed by Act No. 141 of July 20, 1960.

The first error was not committed. The evidence for the prosecution consisted in the testimony of policeman Fidel Rodríguez Dávila. On direct examination he testified that on August 26, 1961, at 5:30 a.m., he saw defendant Julio C. Ordein Sánchez driving a vehicle, license plate No. 711–

711, in Barbosa Street, in Cataño, in the direction contrary to the traffic; that said street was properly marked; that he ordered him to stop and asked to see his license; that his shirt was unbuttoned and he was disheveled; that he asked him for the key to the vehicle and when defendant alighted from the car he was unable to stand on his feet and fell on the pavement; that the witness helped defendant to get up and took him to Police Headquarters in Cataño; the officer asked defendant whether he would volunteer to have a blood test and he refused; that later he took defendant to the Health Unit and there again was warned by Dr. Fragoso, but he refused to submit to any blood, urine, or breath test; that from there the witness took him to Judge San Inocencio, who accused him of driving while intoxicated. "On cross-examination [the Solicitor General continues to resume in his report] the witness added that the other person who was with defendant, Juan Marrero Pacheco, attacked defendant and that he arrested him. (Tr. Ev. 4.) To the judge's questions he answered that defendant received the blows 'in the course of the investigation of these facts' and that he had stated these facts in the sworn statement made before the prosecuting attorney. He further testified that he had filed a complaint against defendant's companion, not only because the latter attacked defendant, but also because he damaged the vehicle belonging to defendant. Answering attorney's question as to whether the facts occurred on Nereida Avenue, he stated that they had occurred on Barbosa Street in Cataño. He gave this same answer to another question by the judge. (Tr. Ev. 6.) Questioned by the judge he testified that defendant's companion 'was quite drunk' and that when walking, defendant 'was making zigzags from side to side.' (Tr. Ev. 7 and 8.) Again he repeated, to the attorney's questions, that the facts did not occur on Nereida Avenue and that he never filed a complaint to that effect. We copy below another part of the examination:

'JUDGE:

'Q. Who was driving the car at that moment?

'A. Julio C. Ordein Sánchez.

'Q. Was there any other person in the car at that moment?

'A. Juan Marrero Pacheco.

'Q. Where was he seated?

'A. In the front seat.

'Q. Then, what happened when you ordered him to stop?

'A. I told him to give me the license; when he was looking for it, he smelled strongly of liquor. When he stepped out of the car he fell on the pavement. At that moment Marrero Pacheco approached defendant and began to beat him.

'Q. Had they had an argument?

'A. I don't know; they could have had it previously.

'Q. And you say he gave him two blows?

'A. Yes, sir.

Q. Was that the way in which you intervened, what did you do to intervene there, when this one attacked him?

'A. I grabbed Pacheco by the arm and stopped him and this boy stood beside me to prevent him from continuing the fight.

'Q. And after that, what happened?

'A. I took him to Police Headquarters.

'Q. When did the damage to the car take place, at what moment?

'A. At that same instant.

'Q. How did Pacheco strike that car?

'A. With his fists and his feet.

'Q. But weren't you holding him at that time?

'A. At that moment I sent a fellow to get a policeman to help me.

'Q. Were both of them drunk?

'A. Yes, sir, they were drunk.

'Q. Then you took both of them to Headquarters?

'A. Yes, sir.' (Tr. Ev. 9-11)." (Solicitor General's Report at pp. 3, 4 and 5.)

The evidence for the prosecution consisted in defendant's testimony. The Solicitor General summarizes it as follows:

"Defendant testified that in the evening of August 26, 1961 he left the farm of Luis Alvarez about 11:00 p.m., and that when he got home, one of his children was sick.

'. . . Then I went out to get some medicines. But I could not get Marchand, who lets me charge medicines, and I stayed with some friends to see whether we could get one of the druggists they knew to open the drugstore. About two o'clock in the morning I decided to return once more. I went back again and that was about four-thirty.

'Q. In the morning?

'A. I returned home and said "Let's wait until they open." In the meantime I was taking steps to see whether we could take him to the hospital, but I noticed that he was getting a little better. Afterwards, a man from my hometown came and told me, "let's go to Cataño and maybe in Cataño we can get someone who can take care of this matter." On the way to Cataño, I had ten dollars in my pocket. On that road from Bayamón to Cataño, we stopped to listen to a fellow playing a guitar.

'Q. Having a sick child you stopped to listen to a guitar?

'A. Then, when we joined a group, a fellow there told me to let him have five dollars, then I told him "but I don't know you, how am I going to give you five dollars?" At that moment the police station wagon came by, then the fellow began to beat me, and then the policeman picked me up from the floor, as he alleges; I kept on walking to headquarters on my own two feet.'

"Lic. Martín Maldonado:

"Q. Then, the one who struck you was this fellow, Marrero Pacheco?

"A. I really don't know whether it was he; when I stepped out of the car there was a group of persons and all of them stood before me.

"Cross-examination by the Prosecuting Attorney Francisco Collazo Lizardi:

"Q. That was about five o'clock in the morning, you had had nothing to drink, you say?

"A. No, sir." (Tr. Ev. 14–15.)

"He testified that he had refused to have a blood test made 'because I had a nose hemorrhage and I think a person with such a hemorrhage can not have his blood taken.' That he was not told about any other sample and that if he would have been asked to have his urine analyzed, he would have accepted. (Tr. Ev. 15–16)." (Solicitor General's Report at pp. 5–6.)

■ We agree with the Solicitor General that this is a case of conflicting evidence which was decided against defendant. Pursuant to the well-settled case law of this Court, we shall not disturb the judgment of the trial judge. *People* v. *Otero*, 67 P.R.R. 717; *People* v. *Blanco*, 68 P.R.R. 862; *People* v. *Rivera*, 71 P.R.R. 115; *People* v. *Garcés*, 78 P.R.R. 95; *People* v. *Aquino*, 79 P.R.R. 17; *People* v. *Santana*, 79 P.R.R. 116.

Let us consider the second error. The policeman testified that the facts reported occurred on Barbosa Street in Cataño, and denied that in the complaint which he filed before the District Court against defendant's aggressor, he had stated that said facts occurred on Nereida Avenue of the same town of Cataño.

■ Appellant complains that he was deprived of his right to impeach the policeman upon being denied the opportunity to introduce in evidence the afore-mentioned complaint. The error, if committed, is harmless in the case at bar, and would not entail the reversal of the judgment appealed from. Appellant himself admits in his testimony the policeman's intervention, at dawn, on the day of the events in the town of Cataño. Even supposing that in the complaint made against defendant's companion the place of the events was made to appear as Nereida Avenue, such discrepancy was not of such nature as to induce the judge to refuse giving credit to the policeman, especially in view of the unbelievable account which defendant made in his testimony to justify his presence in the place of the events.

The contention raised by the third assignment of error is to the effect that there was a deviation from the procedure established in § 5–804 of the Vehicle and Traffic Law and because the prosecuting attorney did not submit the summary to a judge so that the latter could make a determination of probable cause of the commission of the crime, and that pursuant to the amendment made to said section by Act No.

464

94 of June 21, 1961, the prosecuting attorney is not authorized to file informations without the prerequisite of the determination of probable cause by a judge.

██ We shall not stop to discuss this contention. The facts of the case are not appropriate for that purpose. Defendant was arrested by a policeman while he was driving an automobile in a state of intoxication. He advised him of the law's requirements and requested him to submit to a chemical analysis and he refused. He was later taken to a judge and the latter decided that there was probable cause for the commission of the crime of driving a motor vehicle while intoxicated, and consequently, ordered his arrest and fixed the bail bond. We assume the judge fulfilled his duty and that his determination of probable cause was based on the policeman's testimony as well as on his own observation of defendant. Therefore, since there was a previous determination of probable cause by a judge, the filing of an information by the prosecuting attorney lay, independently of whether or not this official has the power to file an information when no determination of probable cause has been made by a judge.

The error was not committed either, and consequently, the judgment appealed from will be affirmed.